150

## REDGRAVE v. WILKINSON et al.
### No. 2775.

Court of Civil Appeals of Texas. Waco.
Jan. 15, 1948.

Rehearing Denied Feb. 12, 1948.

Grady Barrett and Brewer, Matthews, Nowlin & Macfarlane, all of San Antonio, for appellant.

Leonard Brown, Oliver & Peace, and Archie S. Brown Jr., all of San Antonio, for appellees.

TIREY, Justice.

Plaintiff Redgrave brought this suit against defendants for an accounting, for title and possession, and for partition of 119 cigarette vending machines and other assets belonging to the Central Cigarette Service, an assumed name partnership in which plaintiff and defendant Wilkinson were equal owners, and for judgment for the reasonable rental value of the machines during the time the plaintiff's share of the property had been detained. Plaintiff also alleged that the purported sale by defendant Wilkinson to defendant Prock was fraudulent and asked that it be set aside. Defendant Wilkinson answered substantially that he became the sole owner of the cigarette machines under a settlement agreement with the plaintiff about January 1, 1943 (which was denied by Redgrave), and further that the cigarette business was a part of an illegal gambling partnership. Defendant Prock alleged that he was an innocent purchaser of the machines from Wilkinson. Defendant Wilkinson also sought certain relief by way of cross-action against the plaintiff. The jury found in effect that (1) Redgrave and Wilkinson, in February, 1942, entered the business venture of selling cigarettes through cigarette machines under the as-

sumed name of Central Cigarette Service; (2 and 3) that Redgrave and Wilkinson each contributed the sum of $3381.04 to the business venture; (4) that the net earnings from this business from February, 1942, to July, 1943, was $3575; (5) that the monthly rental value in Bexar County for each of the cigarette machines was $4; (6) that the cash value of the cigarettes on hand belonging to this business as of July 8, 1943, was $1362.32; (7) that the reasonable market value of two trucks belonging to the business is $500 each; (8) that the reasonable market value in Bexar County on July 8, 1943, of a one-half interest in the Central Cigarette Service and of the assets thereof was $10,000; (9 and 10) that defendant Wilkinson's purported sale of the 119 cigarette vending machines and the cigarettes on hand to defendant Prock was fraudulent as to plaintiff's rights; (12 and 13) that Redgrave and Wilkinson did not agree to dissolve the Central Cigarette Service as of December 31, 1942, nor did Redgrave trade his interest in the Central Cigarette Service to Wilkinson for Wilkinson's interest in the marble tables and slot machines; (14 and 15) that Redgrave and Wilkinson entered into a partnership for the purpose of owning and operating coin operated equipment and that such partnership began by owning and operating machines for the purpose of gambling; (16) that a part of the proceeds from the operation of the gaming machines were used in the purchase and operation of the cigarette machines; (17) that the ownership and operation of the cigarette machines by the parties was connected with the ownership and operation of the gambling machines; (18) that Redgrave and Wilkinson did not divide all of the coin machines belonging to the partnership about December 31, 1942; (20) that the moneys received from the operation of the marble machines and slot machines were used by the parties for the purchase and operation of the cigarette machines; (21) that plaintiff Redgrave was not indebted to defendant Wilkinson in any sum as a result of the operation of the cigarette machines only.

Plaintiff seasonably filed motion for judgment, which motion also asked the court to disregard the jury's answers to Issues Nos. 14, 15, 16, 17 and 20. Defendants Wilkinson and Prock filed motion for judgment in their behalf on the verdict of the jury. Roberts v. Shell Oil Co., Tex.Civ.App., 175 S.W.2d 106, point p. 108. The court denied plaintiff's motion and entered judgment for defendants Wilkinson and Geoge Prock. The judgment further decreed that Wilkinson take nothing against Redgrave by reason of his cross-action. Plaintiff has appealed.

Points Nos. 1 and 2 are substantially to the effect that the trial court should have disregarded the jury's answers to questions Nos. 14, 15, 16, 17 and 20, because the findings were immaterial and not controlling findings of fact for the reason that the ownership and operation of the cigarette machines was a lawful business venture and was susceptible of separation from the illegal business of the partnership in the operation of the gaming machines, and since the Central Cigarette Service was a lawful enterprise and the jury in its verdict separated the cigarette business from the gaming business, plaintiff is entitled to have the judgment of the trial court reversed and rendered in favor of the plaintiff for the title and possession of one-half of the cigarette vending machines and the other values found by the jury. We sustain these contentions.

In Dietz v. Van Nortwick, Tex.Civ.App., 188 S.W.2d 590, 593 (writ ref. WOM), the Galveston court had this exact question before it for adjudication. That contract between the parties covered the sale and distribution of beer and punch boards designed for gaming, and the court found that the illegal part of the contract could be separated from the legal part, and entered judgment accordingly. In disposing of this case the court said: "To hold that a severable contract, partly legal and partly illegal, was not severable so as to permit recovery of the prepayment, proportionate to the lawful part of the contract, would tend to permit the contractee to coerce the contractor to perform the whole contract." The application of the foregoing principle

**152**

of law was controlling in the disposition of this cause, and the Supreme Court refused to disturb the judgment. In Hartford Fire Ins. Co. v. Galveston H. & S. A. R. Co., Tex.Com.App., 239 S.W. 919, page 923, our Supreme Court said: "It frequently happens as a result of the execution of an illegal contract that in consideration thereof some new title to property or some new property right vests in one of the parties to such contract. When such contract has been fully executed, and suit is brought, not for the enforcement thereof, but for a recovery upon or enforcement of the new title or right thus acquired relief will not be denied." (Citing many cases).

■ It is now well settled "* * * that if a party can show a complete cause of action without being obliged to prove his own illegal act, although said illegal act may appear incidentally and may be important in explanation of other facts in the case, he may recover." City of Galveston v. O'Mara, Tex.Civ.App., 146 S.W.2d 416, 420, point page 420. It is equally well settled "* * * that illegality is an affirmative defense and that when the illegality does not appear from the contract itself or the evidence necessary to prove it, but depends upon extraneous facts, the defense is new matter and to be available must be pleaded." City of Galveston v. O'Mara, supra.

■ In the case of Raywood Rice Canal & Milling Co. v. Erp, Tex.Sup., 146 S.W. 155, 159, our Supreme Court adopted this general rule: " 'A contract illegal in part and legal as to the residue is void as to all, when the parts cannot be separated; when they can be, the good will stand and the rest fall.' Bishop on Contracts, sec. 487." In Haswell v. Blake, Tex.Civ.App., 90 S.W. 1125, 1127, (writ ref.) our courts adopted the rule announced by the Supreme Court of Iowa, Osgood v. Bauder, 75 Iowa, 550, 39 N.W. 887, 1 L.R.A. 655, which is: " 'If one of two considerations of a promise be void merely, the other will support the promise; but that if one of two considerations be unlawful the promise is void. When, however, the illegality of a contract is the act to be done, and not in considera-

tion, the law is different. If, for a legal consideration, a party undertakes to do two or more acts, and a part of them are unlawful, the contract is good for so much as is lawful, and void for the residue. Whenever the unlawful part of a contract can be separated from the rest, it will be rejected and the remainder established.' " See also 10 Tex.Jur. 247, 254; C. C. Slaughter Cattle Co. v. Potter Co., Tex.Civ.App., 235 S.W. 295, affirmed Tex. Com.App., 254 S.W. 775; 17 C.J.S. Contracts, § 289, and authorities there cited.

■ The above general rules of law are applicable to the factual situation here. It is true that Redgrave and Wilkinson entered into a partnership for the purpose of operating gaming devices. They were successful in this business venture and in 1942 they invested some of their profits in cigarette vending machines and operated such business under the assumed name of the Central Cigarette Service on the basis of equal partners. It is without dispute that the operation of the cigarette vending machines was in all things legal and such operation created new property rights which Redgrave and Wilkinson shared equally. Redgrave brought this suit to enforce and secure to him the new property rights thus acquired.

All of the controlling issues with reference to the number of the cigarette machines and the operation thereof were tendered by the pleadings and the evidence and no complaint is made that such issues were not tendered by the pleadings, nor that the jury's verdict is not supported by the evidence, nor are the amounts of the findings of the jury challenged in any respect. It is clear from a reading of the special issues and the jury's answers thereto that the cigarette business was separated from the gaming business conducted by the partnership, and this case falls squarely within the well settled principles of law herein quoted.

Nor do we think the application of the law to the factual situation is in conflict with the application of the rule of law made by our Supreme Court in Wiggins v. Bisso, 92 Tex. 219, 47 S.W. 637, 639, 71 Am.St.Rep. 837, the case on which ap-

pellees rely. In that case our Supreme Court said: "There can be no doubt that where parties have jointly, in the pursuit of an illegal purpose, acquired money, and have invested that money in property which is in the possession of one of the joint owners, such possessor cannot resist the claim of the other on the ground of the illegality of the business in which the money was first acquired." (Italics ours) That is the exact situation here. Redgrave lodged his case against Wilkinson on the theory that in February, 1942, he and Wilkinson had engaged in the partnership business of operating cigarette vending machines under the assumed name of the Central Cigarette Service on the basis of being equal partners. He alleged specifically the value of this particular business and the acts of Wilkinson charging him with a fraudulent sale of the cigarette business to Prock for the purpose of defrauding him. The number of the machines and their values, as well as the rentals, were issues tendered by the pleadings and the evidence, and the jury has found each of these values. It is obvious under the decisions herein cited that the fact that Redgrave and Wilkinson were previously engaged in a gaming business and that a part of their profits from the gaming business was invested in property used in a legal business cannot defeat Redgrave's right to recover his share of the property rights thus acquired.

■ Since the jury has found the controlling issues in this cause, it is our duty to render the judgment here that should have been rendered in the court below. See Rule 434, Texas Rules of Civil Procedure; Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 150 A.L.R. 1369. See also Lone Star Gas Co. v. Kelly, Tex.Civ. App., 166 S.W.2d 191; Mexican Light & Power Co. v. Texas-Mexican Ry. Co., Tex. Civ.App., 190 S.W.2d 838; Wooten v.

Maierhofer, Tex.Civ.App., 190 S.W.2d 513; Duvall v. Clark, Tex.Civ.App., 158 S.W.2d 565.

Accordingly, the judgment of the trial court, insofar as it decreed that Wilkinson take nothing against Redgrave, must be affirmed. The judgment of the trial court, insofar as it decreed that Redgrave take nothing against Wilkinson and Prock, must be reversed and rendered, and judgment is here rendered in favor of Redgrave against K. F. Wilkinson and George Prock, jointly and severally, for the title and possession of one-half of the 119 cigarette machines described in Exhibit A, attached to plaintiff's motion for judgment, and for reasonable rental value of each of the fifty-nine machines from July 8, 1943, to the date of trial, at $4 monthly, amounting to the aggregate sum of $11,080, with interest thereon from July 1, 1947, the date the judgment was entered in the lower court until paid at the rate of six per cent per annum, and that Redgrave recover the further sum of $1787.50 against K. F. Wilkinson, same being one-half of the net earnings of the cigarette machines from February 24, 1942, to July 8, 1943, and the further sum of $681.16, representing one-half of the cash value of the cigarettes on hand on July 8, 1943, with interest on these sums at the rate of six per cent per annum from July 8, 1943, until paid, and the further sum of $250, with interest thereon from July 1, 1947, the date the judgment was entered in the lower court, until paid at the rate of six per cent per annum, representing one-half of the alleged value of the two trucks, together with all costs of this appeal, and that all appropriate writs necessary for the enforcement of this judgment be issued by the Clerk of the court below.

Accordingly, the judgment of the trial court is affirmed in part and reversed and rendered in part, as hereinabove set out.